Good morning, Your Honors. On behalf of Mr. Sandhu Girish Sareen, Judge Nelson's last hearing, basically our premise is that the Board of Immigration Appeals' denial is a misstatement of law and is not supported by the record of proceedings. This Circuit of Appeals has numerous cases coming out of India, especially dealing with Sikhs in Punjab in 1995. My client fled India and the state of Punjab in 1992 and hasn't returned. Now, the leading case, obviously, is Singh v. Ilchard, 63, Fed Second at 1509, which the BIA did not take into consideration or even state, where this Court of Appeals found persecution on account of political opinion where one party to a conflict insisted to the victim that the victim was aligned with the other side. This is a terrible time in Indian history. Mr. Sareen, there's no question that Sikhs have been granted asylum in this country and there are cases that support that. The IJ and the BIA said, first of all, that your client didn't personally suffer any past persecution, right? The IJ said that my client didn't get arrested and beaten. My client did suffer past persecution. That was a misstatement on their part. What past persecution did he suffer? Well, Your Honor, since 1985, he was a Sikh who had a political opinion where he was demanding an independent Sikh. No, I know that, but what persecution did he suffer? In 1987, Your Honor, he was in a public demonstration. The police tried to arrest him. He ran away. He had two immediate family members living with him, his cousins, who were arrested in 1989 when the police came looking for him, and they were detained, beaten, and tortured by the police. Okay, now, with respect... They ran away to Italy and haven't returned. Okay, now, with respect to whether he has a fear of future persecution, can you tell us why he reasonably fears, what the record shows he reasonably fears? I was trying to address past persecution, but I will now address future persecution and his well-founded fear of returning. In the record of proceedings, Your Honor, you have the State Department profile for 1997. My client came into the country in 1992. He had his deportation hearing in 1997, and that profile clearly indicates, and his fear is of the Indian police. And since then, and before then, since 1992 till today, we will state, this Court can take judicial notice, that every United States Department of State report states that the Indian police is still committing human rights abuses, and they define those human rights abuses as excessive use of force, torture, rape, and death of subjects in police custody, arbitrary arrests, and state that thousands have been arrested under special circumstances. Now, that is on the first and second page of the report. Every single report since 1992 till today. Now, this Court, going back to Singh v. Iljib, also held that, reading the reports of Department of State and Amnesty International, that India defines terrorism so broadly and treats those accused or suspected of terrorism so hastily that police investigations of many individuals in the United States Department of State and Amnesty International have not been carried out. These individuals are not legitimate government functions, but rather a pattern of political suppression. My client believes in an independent Sikh state. So is it your thought, then, that any Sikh who makes it to the United States after having publicly supported an independent Sikh state is automatically entitled to asylum here? Not at all, Your Honor. But what you're relying on is the State Department's country reports, which would apply equally to all Sikhs in that situation. So all they have to do is get here, as you read it, and they're entitled to asylum. Now, I'm saying he was subjected. He came into harm's way when he was in India. The police had him on their radar. They were looking for him. They were seeking him out. They detained his father. They detained his two cousin brothers or his brothers. They all lived as a close-knit family. This isn't somebody who just came over here and said, gee, I don't want to go back because I believe in an independent Sikh homeland. He defined it. This was a time, Your Honor, where the State Department report says the Indian police not only arrested these individuals from 1984 to 1995, but killed them, murdered them, and destroyed their bodies, cremated them in the thousands. This is a fear he had. He ran away in 1992 with his two cousins to Italy, not because he wanted to come in and have the better life that the United States economy would provide any individual from the third world. He had recently got married. He hasn't gone back to see his father for over 11 years. He hasn't seen his wife. There's a fear he has of the Indian police, and the Indian police has manifested that to any individual that they have already suspected of terrorism as this Ninth Circuit Court of Appeals has held. They accused him. They went looking for him. He came in harm's way. He received death threats by them. It's not somebody who just took the plane and came in here and said, now I believe in an independent Sikh homeland. Where did he testify, excuse me, that he had death threats? He stated, Your Honor, that his father informed him that the police said they were going to kill him, and they told him, and he told him to leave in 1992. He specifically stated that I can inform the court as to what date that is. I believe it's transcript 00108, where he said his father in 1992 told him to leave, otherwise the police would kill him. You can infer from that that the father had received notice that the Indian police were going to kill his son. Now, just to deal with that direct quote, all I'm trying to state over here is this is not an individual as they mistakenly, the BIA held, where he was never directly or indirectly a victim of threat. That is not correct. He was directly a victim of threat. He came into harm's way. What was the direct threat? How was he a victim of a direct threat? When the police tell you they're going to kill you. But that was to his father, in other words. The death threat was to him conveyed to his father, we want your son. We're going to kill him. Because he has a political opinion for which we believe he's aligned with the other side. This is a civil war in the state of Punjab. There is no middle ground. There is no gray ground. He has demonstrated, he has manifested a political opinion. I want an independent Sikh homeland because I feel the Indian Hindu government is persecuting Sikhs. I would like to take the rest of my time to come on. Thank you very much. Thank you. Good morning. May it please the court. Dan Goldman on behalf of the respondent. This court should uphold the decision of the Board of Immigration Appeals. Mr. Sandhu has not shown, has not met his burden to show either past persecution or an objectively reasonable, well-founded fear of future persecution. His testimony was vague on key points and it simply did not meet the level of evidence necessary to satisfy his burden to show a well-founded fear of future persecution. Mr. Goldman, let me ask you this. Do I understand the facts correctly? We take as true because there was no adverse credibility finding. We take as true that he was living with these cousins and the cousins were tortured and persecuted because of their political activities. We do take that as true. These are people that he was living with in the same house. I presume in the same house. High check. Yeah. Then he says that three months before the hearing, the father reports that the police are now coming to look for him. Why isn't that, why doesn't that compel the conclusion that he has a well-founded fear of future persecution? The people who tortured his cousins are now coming asking about him. Two parts to that answer, Your Honor. First of all, there's no specific testimony that it's the exact same people, although it's inferred I suppose from the testimony that it's the police who tortured his cousin and although it's not testified to that it would be the same police looking for him. But more importantly, his burden isn't simply to show a subjective fear. He's testified that he fears his return. It's a two-part test. The second part of that test is that his fear has to be objectively reasonable. Why isn't that reasonable if you throw something at Judge Brunetti and then you throw something at Judge Nelson and then you come looking for me, why shouldn't I have an objectively reasonable fear that you're going to do the same thing to me that you did to those two? First of all, Your Honor, I would never do that. That's talking very hypothetically, of course. I think it's a different situation. In your hypothetical, perhaps you could reasonably fear that I'm going to throw something at you. It's not just a case that they're going to arrest him. That in and of itself wouldn't meet his burden. And his burden is that he has to show an objectively reasonable fear. He's testified in the record that the police came to look for him many times. There's not a whole lot of detail about that. That's one of the problems in this case is that the testimony, particularly on key points, is vague. He's testified that the police came to look for him many times, came to arrest him many times, unsuccessfully apparently. It raises certain questions about they may not be the keystone cops, but they're obviously not very good at arresting people. If they've come to look for him many times, presumably at his home, that's again an inference, and they've never been able to arrest him. This would be one more in the list of many times, but what that undercuts, it doesn't necessarily undercut his subjective fear, but it certainly undercuts the objective reasonability of his fear. Again, the testimony is vague. For example, he talks about going into hiding, although it's not mentioned in his original asylum application. He does testify to that, but raises the question of what does that actually mean, to go into hiding? His testimony is that while in hiding, he continued to work. He continued his efforts on behalf of the Federation. He got married. He had a child. This was not a situation where going into hiding, at least based on the testimony, meant never coming out, never seeing the light of day, no exposure to the outside world. He had all of those things. All of that, again, undercuts the objective reasonability of his fear. That's his burden to show. The question is not for this Court, is there another possible outcome that could have come out of this testimony? The question is, is another outcome, as your question noted, compelled by the evidence in the record? It's the government's position that it is not. What about the country reports as bearing on the objective reasonableness of his fear? In other words, they seem to be fairly uniform, that there's lots of ugly things going on in India relative to Sikhs. What about wouldn't that support his objective component? It would support his objective fear. We note that, I believe it's on page 133 of the record, Your Honor, that the State Department report that's in the record suggests that a lot of the efforts on the government's behalf against Sikhs have concluded several years ago. The report, to be fair, does say that a lot of the people who committed those offenses were not held accountable, but it does suggest that a lot of the persecution of Sikhs may have concluded. We would also note for the record that Kishner submitted some additional State Department reports, and he suggested that this Court should take judicial notice of them. It's the government's position that those are not in the administrative record, and therefore should not be before the Court. But to answer Your Honor's question, yes, it certainly supports his fear, but then there's also the question of what did they do to him. As Your Honor's question earlier noted, if all that it took was a State Department report, then theoretically every Sikh who made his way or her way to the United States of America and said, I was politically active, I was at a demonstration, I was chased away, they tried to arrest me, here's a State Department report, every single one of those individuals, while their fear might be subjectively genuine, every single one of them would automatically be entitled to asylum. That's just not the law as it is. And that's why, Your Honor, again, Kishner has not made a showing, an objectively reasonable showing of the well-founded fear of persecution. Subject to the Court's questions, Your Honor. Government must submit honest briefs. All right. Thank you. Thank you, Your Honor. You have some time left. I think counsel is mistreating the word objective. The objective is the transcript of proceedings and the country conditions. What counsel is asking this Court of Appeals to do is infer information. And the BIA stated specifically in relying on a case that my client never indirectly or directly suffered any kind of threats or harm. And that's an incorrect conclusion and statement of fact and law. Now, calling the Punjab police keystone cops after they have killed close to 25,000 people during this period of time, it's not even insensitive. It's just quite out of line. They are not keystone cops. They were fairly sent on a mission that anybody who demands an Indian Sikh state had to disappear. My client was fortunate enough not to have been arrested. If he was, he would have suffered the same pain and suffering that his cousins did. Just because he did not suffer the same pain and suffering. And the cases in this Court of Appeals state that he does still qualify for asylum because he has a well-founded fear of persecution, as well as he's demonstrated a claim for past persecution. The reason of sending you the 2003 report, after my client fled in 1992, was not to show that my client can go back to India and that the police in India are keystone cops. It's to illustrate to this Court the severe nature of human rights violations still in existence in India and in the state of Punjab. And that was the only reason to show that the Punjab police are still seeking out individuals who demand an independent Sikh homeland. As long as he's demanding an independent Sikh homeland, he will always be on their radar screen and he will always be in harm's way. I read the material that you sent in, the recent material, is showing that things have improved in India. Is that true? Things have improved generally in India. We're talking of Punjab police seeking out Pakistani individuals who are demanding an independent Sikh homeland. The Amnesty International report starts off with that the cycle of violence in Punjab has not been broken. It begins its first two lines stating that torture is still prevalent and by the Punjab police. It doesn't say, however, the primary targets of torture are no longer Sikh separatists. Targets of torture have changed since the period of militancy. Now the majority of victims are detainees held in connection with criminal investigations and include members of all religious communities and social groups. They've broadened their group of detainees. That is correct. But then it goes on throughout the report to mention individuals who were people who were separatists and held separatist views, Your Honor. Just quote, torture is no longer used as a part of the counterinsurgency strategy, close quote. That is correct. It is there to suppress political opinion. There is no armed insurrection in Punjab today. That is correct. Thank you. All right. Thank you. Case just argued will be submitted again. We thank counsel for being willing to come early.
judges: Brunetti, Tg Nelson, Silverman